**ALLENDATE MUTUAL INSURANCE COMPANY and Factory Mutual International, Plaintiffs,**

v.

**BULL DATA SYSTEMS, INC., Zenith Data Systems, S.A., Zenith Data Systems Europe, S.A., and Alexander & Alexander, Inc., Defendants.**

No. 91 C 6103.

United States District Court, N.D. Illinois, E.D.

Nov. 10, 1992.

Franklin M. Sachs, Podvey, Sachs, Meanor, Catenacci, Hildner & Cocoziello, Newark, N.J., Robert Kalec, Altheimer & Gray, Chicago, Ill., for plaintiffs.

William M. Stevens, McBride, Baker & Coles, Thomas F. Bush, Jr., Saunders & Monroe, Chicago, Ill., Bruce E. Fader, Proskauer, Rose, Goetz & Mendelsohn, New York City, for defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of defendants Bull Data Systems, Inc., Zenith Data Systems, S.A., and Zenith Data Systems Europe, S.A. (collectively, "ZDS Defendants"), for an order compelling plaintiffs Allendale Mutual Insurance Company ("Allendale") and Factory Mutual International ("FMI") to produce certain documents in discovery.

It being apparent that the instant matter represents yet another example in an increasing array of satellite litigation over the discoverability of large volumes of documents compiled by an insurer during its relationship with insured, we issue this standing order. Generally, the parties will have joined battle over the issue of coverage, and the insurer will claim that materials sought by the insured are protected from discovery by the attorney-client privilege or work product doctrine or both. More often than not, in our experience, the insurer will not have made a colorable attempt to meet its burden of establishing the applicability of the privilege it asserts to each of the documents it hopes to withhold from discovery. As a result of encountering this scenario on more than one

occasion, this court has developed this standing order regarding such disputes. A brief review of the parties' submissions in this case suggest it is appropriate to issue the order in this matter, as plaintiffs Allendale and FMI assert that the work product doctrine protects the documents at issue from discovery and have not so much as submitted a privilege log to support their assertions. Owing to this dearth of information, and the chance that plaintiffs might also assert the attorney-client privilege as to the materials at issue, we will address the elements of the privilege and the work product doctrine.

## I. DISCUSSION

### A. *Attorney–Client Privilege*

■■■ The party seeking to invoke the protection of a privilege, or discovery opponent, has the burden of establishing all of its elements. *U.S. v. White*, 950 F.2d 426, 430 (7th Cir.1991), *citing United States v. Lawless*, 709 F.2d 485, 487 (7th Cir.1983). In the case of the attorney-client privilege, the Seventh Circuit has adopted the elements as outlined by Wigmore:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* A claim of privilege cannot be a blanket claim, but must be made and established on a document-by-document basis. *Id.* The scope of the privilege is narrow, because it is a "derogation of the search for truth." *Id.* (*citing In re Walsh*, 623 F.2d 489, 493 (7th Cir.1980)). We stress that each of these elements must be established as to each document, as the mere existence of an attorney-client relationship is not sufficient to cloak all communications with the privilege. *Ohio–Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 28 (N.D.Ill.1980).

### B. *Work Product Doctrine*

■■■ The work product doctrine is distinct from, and broader than, the attorney-client privilege. *In re Air Crash Disaster at Sioux City, Iowa*, 133 F.R.D. 515, 519 (N.D.Ill.1990), *citing United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975). The work product privilege developed to protect the work of an attorney from encroachment by opposing counsel. *Binks Mfg. Co. v. Nat. Presto Industries Inc.*, 709 F.2d 1109, 1118 (7th Cir.1983). It consists of a multi-level protection whereby that information most closely related to an attorney's litigation strategy is absolutely immune from discovery, while that information with a more tenuous relationship to litigation strategy might be available in circumstances evincing a substantial need or undue hardship on the part of the discovery proponent. Fed.R.Civ.P. 26(b)(3).[1]

■■■ The threshold determination in a case involving a claim of work product privilege is whether the material sought to be protected from discovery was prepared in anticipation of litigation. *Binks*, 709 F.2d at 1118. The determination of whether materials are prepared in anticipation of litigation, however, while central to the work product doctrine, eludes precision. This is especially the case in the insurance context, where insurers routinely perform investigations and accumulate files even

---

1. Rule 26(b)(3) provides that:
 a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

when no litigation ensues. In this court's experience with such cases, the work product doctrine becomes an all-encompassing shroud of secrecy that is at once at odds with the federal rules' liberal discovery policy and the protection of attorney's thought processes and strategies the doctrine was designed to be. Rather than using the doctrine to immunize these strategies and opinions from discovery, some discovery opponents seem to use the doctrine to relieve themselves of the burden of producing factual information accumulated in what appears to be routine investigations. Accordingly, we have found it helpful to express the elements of the work product doctrine into the concepts of "causation" and "reasonable anticipation" of litigation. *See Harper v. Auto–Owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D.Ind.1991).

■ As already noted, "work product" is defined as those materials produced *because* of the *anticipation* of litigation. Fed.R.Civ.P. 26(b)(3); *Binks*, 709 F.2d at 1119 (emphasis added). Thus, there is a "causation" element insofar as production of the material must be caused by the anticipation of litigation. If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work product doctrine. Fed.R.Civ.P. 26(b)(3) (advisory committee notes). Accordingly, even if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes. *Binks*, 709 F.2d at 1118; *See also* Wright & Miller, *Federal Practice and Procedure, Civil*, § 2024. ("Prudent parties anticipate litigation, and begin preparation prior to the time the suit is formally commenced. Thus, the test should be whether, in light of the nature of the document and the factual situation ... the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") That is to say, the mere fact that a discovery opponent anticipates litigation does not qualify an "in-house" document as work product. *Janicker v. George Washington University*, 94 F.R.D. 648, 650 (D.C.D.C.1982).

■ As for "anticipation of litigation," courts have made clear that, because litigation can be anticipated at the time almost any incident occurs, a substantial and significant threat of litigation is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document. *Harper*, 138 F.R.D. at 659. Although a precise definition of this level of "threat" is elusive, it is perhaps best described as requiring a showing of "objective facts establishing an identifiable resolve to litigate." *Id.* at 660, (*quoting Binks*, 709 F.2d at 1119). The fact that litigation actually ensues or that a party has retained an attorney, initiated investigations, or engaged in negotiations over a claim, is insufficient to dispositively establish anticipation of litigation. *Harper*, 138 F.R.D. at 660 (collected cases).

■ Bearing in mind all these factors, it can be summarized that, in order to establish work production protection for a document, a discovery opponent must show that "the primary motivating purpose behind the creation of a document ... must be to aid in possible future litigation," under circumstance where the discovery opponent can show "objective facts establishing an identifiable resolve to litigate." *Binks*, 709 F.2d at 1119 (*quoting Janicker*, 94 F.R.D. at 650). Only by strictly construing the elements of work product, can the doctrine's original intent be best served. That intent is to protect the adversarial process by providing an environment of privacy in which a litigator may creatively develop strategies, legal theories, and mental impressions outside the ordinary liberal realm of federal discovery provisions, thereby insuring that the litigator's opponent is unable to ride on the litigator's wits. *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). To apply the doctrine to those materials that insurers, or other parties, would produce in the ordinary course of business even if litigation were not imminent is an unwarranted extension of the doctrine. Therefore, we caution insurers, such as the plaintiffs herein,

against asserting the doctrine to preclude from discovery materials that, given the minimal information presently available to this court, appear to have been produced in connection with the routine investigation and evaluation of an insurance claim.

## II. CONCLUSION

 Accordingly, we hereby order the plaintiff-discovery opponents to produce a privilege log listing each separate document they claim to be beyond discovery, described in the following separate categories. For *each* document, the log should identify the date, the author and *all* recipients, along with their capacities. The log should also describe the document's subject matter, purpose for its production, and a specific explanation of why the document is privileged or immune from discovery. These categories, especially this last category, must be sufficiently detailed to allow the court to determine whether the discovery opponent has discharged its burden of establishing the requirements expounded upon in the foregoing discussion. Accordingly, descriptions such as "letter re claim," "analysis of claim," or "report in anticipation of litigation"—with which we have grown all too familiar—will be insufficient. This may be burdensome, but it will provide a more accurate evaluation of a discovery opponent's claims and takes into consideration the fact that there are no presumptions operating in the discovery opponent's favor. Any failure to comply with these directions will result in a finding that the plaintiff-discovery opponents have failed to meet their burden of establish the applicability of the privilege.

It is hereby ordered that the plaintiffs, following the aforementioned prescription, submit to this court a privilege log within 15 days of receipt of this order.