Marilyn **BROADNAX**, Individually and as Administrator of the Estate of Franco Jackson, Deceased, Plaintiffs,

v.

**ABF FREIGHT SYSTEMS, INC. Defendants.**

No. 96 C 1674.

United States District Court, N.D. Illinois, Eastern Division.

July 31, 1998.

---

Douglas W. Bristol, Chicago, IL, for Plaintiff.

Thomas E. Patterson, Hickey, Driscoll, Kurfirst, Patterson & Melia, Chicago, IL, for Defendant.

## MEMORANDUM ORDER

BOBRICK, United States Magistrate Judge.

Before the court is the motion of plaintiff for a ruling on defendant ABF Freight Systems, Inc. claims of immunity of certain documents from discovery.

## I. BACKGROUND

This is a wrongful death action arising out of the death of Franco Jackson in a collision of his truck and defendant's truck in Stokesdale, North Carolina, on February 23, 1996. The defendant's truck swerved into Mr. Jackson's lane—the oncoming lane of traffic—and he was unable to avoid hitting that vehicle's trailer. Mr. Jackson died as a result of this collision. Marilyn Broadnax, Mr. Jackson's mother and Administrator of his estate, filed a wrongful death action on March 7, 1996.

Plaintiff has requested documents from defendant ABF, who has withheld fifteen claiming attorney-client privilege, work product doctrine, and ICC (49 U.S.C.A. § 504(f)). On May 18, 1998, defendant created a privilege log purportedly detailing its claims of privilege for the fifteen documents. Plaintiff responded to the privilege log on May 26, 1998, and has filed a Motion for Ruling on Defendant ABF's Privilege Log. Documents Three through Twelve presently are at issue; de-

fendant claims only the work product doctrine for the protection of these documents. Defendant has produced all of the documents at issue for *in camera* inspection except Document Nine.

## II. ANALYSIS

The burden here is on the defendant to establish that the work product doctrine immunizes the documents at issue from discovery. *U.S. v. Hamilton,* 19 F.3d 350, 354 (7th Cir.1994) (evidentiary privileges in general); *Binks Mfg. Co. v. Nat. Presto Industries Inc.,* 709 F.2d 1109, 1119 (7th Cir. 1983) (work product doctrine specifically). The work product doctrine is distinct from, and broader than, the attorney-client privilege. *In Re Air Crash Disaster at Sioux City, Iowa,* 133 F.R.D. 515, 519 (N.D.Ill.1990) (*citing United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 2170 n. 11, 45 L.Ed.2d 141 (1975)). The work product privilege developed to protect the work of an attorney from encroachment by opposing counsel. *Binks,* 709 F.2d at 1109. It consists of a multi-level protection whereby that information most closely related to an attorney's litigation strategy is absolutely immune from discovery, while that information with a more tenuous relationship to litigation strategy might be available in circumstances evincing a substantial need or undue hardship on the part of the discovery proponent. Fed. R.Civ.P. 26(b)(3).[1] Accordingly, information that is merely factual may not be withheld under the umbrella of work product but must be available, if not through the production of otherwise protectible documents, then through interrogatories or depositions. 8 Charles Alan Wright Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, § 2023, at 194.

---

1. Rule 26(b)(3) provides that:

a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the

materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

■ The threshold determination in a case involving a claim of work product privilege is whether the material sought to be protected from discovery was prepared in anticipation of litigation. *Binks,* 709 F.2d at 1118. The determination of whether materials are prepared in anticipation of litigation, however, while central to the work product doctrine, eludes precision. This is especially the case in certain contexts, where the discovery opponent routinely performs investigations and accumulates files even when no litigation ensues.

■ Ordinarily, we have found it helpful to express the elements of the work product doctrine into the concepts of "causation" and "reasonable anticipation" of litigation. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.,* 145 F.R.D. 84, 87 (N.D.Ill.1992). There is a "causation" element insofar as production of the material must be caused by the anticipation of litigation. *Id.* If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work product doctrine. Fed. R.Civ.P. 26(b)(3) (advisory committee notes). Accordingly, even if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes. *Binks,* 709 F.2d at 1118. That is to say, the mere fact that a discovery opponent anticipates litigation does not qualify an "in-house" document as work product. *Janicker,* 94 F.R.D. at 650.

■ As for "anticipation of litigation," courts have made clear that, because litigation can be anticipated at the time almost any accident occurs, a "substantial and significant threat of litigation" is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document. *Allendale,* 145 F.R.D. at 87. Demonstration of a substantial and significant threat requires a showing of objective facts establishing an identifiable resolve to litigate. *Id.* The fact that litigation ensues or that a party retains an attorney, initiates an investigation, or engages in negotiations over a claim, is not dispositive on the issue of whether litigation

was anticipated. *Id.* (*citing Harper v. Auto–Owners Ins. Co.,* 138 F.R.D. 655, 660 (S.D.Ind.1991)) (collected cases).

The instant case deals with the tragedy of a death due to a vehicular accident. Defendant relies heavily on the serious nature of the accident and the fact that it quickly retained counsel to establish that the documents in question are protected. We have already noted that hiring an attorney does not carry the discovery opponent's burden of establishing work product applicability. If the retention of counsel were dispositive, there would be no need for analysis of the work product doctrine's elements in nearly any case. As for the sad nature of the incident, obviously, when such an event occurs, litigation is likely to be anticipated. The defendant in such a case, however, presumably has purposes beyond defense of litigation in preparing investigatory the documents. Such accidents necessitate in-house, ordinary-course-of-business investigative reports. *See, e.g. Ennis By and Through McMillan v. Anderson Trucking Service, Inc.,* 141 F.R.D. 258, 260 (E.D.N.C.1991). The fact that a death is involved does not change these course-of-business practices. *See, e.g. Sioux City,* 133 F.R.D. at 519–520 (in-house investigative reports after airline crash). Here, given the foregoing standard and considerations, we must find that several of the documents at issue are not covered by the work product doctrine.

■ Documents Four and Five, and Six are in-house reports of the accident, entitled "Telephone Report of Vehicular Accident." They are forms, apparently filled out when the driver called in the occurrence to his employer. They include attached notes, but nothing that suggests they were not completed in the ordinary course of business. They do not qualify for work product protection. Document Six consists of print-outs of these accident reports, with similar factual information. As with Documents Four and Five, there is nothing to distinguish Document Six from a course-of-business accident report. It, too, must be produced.

■ Document Nine, not produced *in camera,* is described in defendant's privilege

log as "Opinion re: tickets given driver." We cannot truly determine the nature of this document from this cryptic description. Presumably, tickets issued to a driver are recorded in the ordinary course of a trucking company's business. Here, defendant has not met its burden of establishing the applicability of the work product doctrine as to this document.

Document Ten lists the tickets issued to defendant's driver, and notes actions that defendant might take to discipline the driver. These are clearly course-of-business, in-house considerations that would be made in the wake of any trucking company accident. Once again, such a document cannot qualified as protected work product.

[10] Document Eleven is another in-house, form report; this one entitled "Supervisor's Report of Vehicular Accident." As the name suggests, such a form would be completed after every accident, litigation or not. Document Twelve is one more "Accident Report," this one appearing to be a print-out transcription of a telephone call reporting the accident. Neither Document Eleven nor Twelve constitute protectible work product.

Document Three, on the other hand, is a "Fatality Accident Report" discussing witnesses and possible defenses to a claim. Documents Seven and Eight contain impressions regarding defendant's potential liability. These three documents—unlike the foregoing seven, were clearly prepared in anticipation of litigation and contain information that is beyond discovery under the work product doctrine.

### III. CONCLUSION

For the foregoing reasons, defendant is hereby ordered to produce Documents Four, Five, Six, Nine, Ten, Eleven, and Twelve; Documents Three, Seven, and Eight, are immune from discovery under the work product doctrine.